**John W. LIVICK, Plaintiff, Appellant,**

v.

**THE GILLETTE COMPANY; The Gillette Company Retirement Plan, Defendants, Appellees.**

**No. 07–2108.**

United States Court of Appeals, First Circuit.

Heard Jan. 10, 2008.

Decided April 17, 2008.

# 26

Thomas G. Moukawsher with whom Moukawsher & Walsh, LLC was on brief for appellant.

Richard P. Ward with whom M. Concetta Burton and Ropes & Gray LLP were on brief for appellees.

Before LYNCH, Circuit Judge, GIBSON,* Senior Circuit Judge, and HOWARD, Circuit Judge.

* Of the Eighth Circuit, sitting by designation.

1. The Summary Plan Description (required by ERISA) did not include the same level of detail but flagged the issue that "[s]pecial provisions might apply to employees who

LYNCH, Circuit Judge.

John Livick appeals a grant of summary judgment to his former employer, the Gillette Company, and the Gillette Company Retirement Plan (collectively "Gillette") in a dispute over the amount of his pension benefits under Gillette's employee benefit plan ("Plan"). Livick sued Gillette under the civil enforcement provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461, arguing that Gillette must pay him the amount of the erroneous benefit estimates he received before he left Gillette instead of the lesser amount he was entitled to under the Plan. We affirm the district court's grant of summary judgment for defendants.

## I.

Livick began working for Parker Pen Company in Janesville, Wisconsin, in 1976. In 1993, Parker Pen was bought by Gillette Stationary Products Group ("Gillette SPG"), a division of Gillette, and the pension plans of the two companies were merged together at the end of 1995. In 1997 and again in 1998, Livick received letters from Gillette SPG explaining how the Parker Pen pension he had already accrued would be treated under Gillette's Plan. These letters enclosed an estimate of Livick's Parker Pen pension—$1047 a month—and stated in the opening paragraphs that Livick would receive this pension "in addition to any benefit you accrue under the Gillette Plan for your service on and after January 1, 1996." The official Plan terms also included similar clear language under the heading "Former Participants in The Parker Pen Pension Plan."[1]

were employed by a company prior to the time of its acquisition by [Gillette]. For example, compensation and service for this company might not be credited under the Pension Plan to the same extent as the Gillette

Gillette decided to close the Janesville plant in 1999, so Livick moved to Boston to take another position within Gillette SPG. A year later, Gillette announced the sale of Gillette SPG to another company, resulting in the elimination of Livick's position.

Livick attended a meeting in October 2000 in which Gillette explained what benefits would be available for the Gillette SPG workers like Livick who were losing their jobs. This is the first time someone from Gillette suggested that Livick's Gillette pension might cover the years he worked for Parker Pen. Following up on that meeting, Livick met individually with Wayne Brundige, a human resources representative, the next week. Brundige calculated an estimate of Livick's Gillette pension based on a hire date of 1976 instead of the appropriate Gillette hire date of 1996. That estimate put Livick's Gillette pension at $2832 a month.

While still employed at Gillette SPG, Livick went online to check Brundige's estimate against Gillette's pension estimator ("Estimator"). Before the online Estimator can be accessed, the user must pass through a "Disclaimer" page that emphasizes repeatedly that the site *only* provides estimates. That page also notes that the Estimator does not take into account "some very specific features of the Gillette Retirement Plan." In capital, bold letters at the bottom of this disclaimer page, the Estimator website states "IN THE EVENT THERE IS ANY DISCREPANCY BETWEEN THE INFORMATION PROVIDED BY THE ESTIMATOR AND THE BENEFITS TO WHICH YOU ARE ENTITLED, THE TERMS OF THE GILLETTE PLANS WILL APPLY." In a more detailed "Definitions and Addition-

al Information" section of the website, a subsection entitled "Parker Frozen Benefit" explains that former Parker Pen employees would receive their earned pension under the Parker Pen plan "plus the benefit [they] earn under the terms of the Gillette Retirement Plan for service after [December 31, 1995]." Livick printed this portion of the website in December 2000 while researching how his pension would be calculated. The website's calculator generated a pension estimate for Livick of $2914 a month based on a hire date of 1976, which was the incorrect date under the Parker Pen frozen benefit policy.

Livick's job was formally terminated on January 12, 2001.[2] Livick turned down another job offer, he says in reliance on the higher-than-expected pension estimates. In 2002, after Livick again visited the online Estimator and generated yet a higher estimated benefit, Livick called Gillette's Human Resource Center to ascertain which estimate—Brundige's or the Estimator's—was more correct. He was told that the online estimate was likely more correct, but that he would be sent a new estimate of his pension benefit.

That new benefit statement correctly showed that Livick's Gillette pension would be based solely on the years he worked for Gillette. This dropped his Gillette pension down to $789 a month; his Parker Pen pension ($1047 a month) presumably remained unchanged.

Livick sued Gillette in U.S. District Court in May 2005, claiming that Gillette was in breach of its fiduciary duty to Livick under ERISA because of these "misrepresentations." He requested equitable relief under ERISA § 502(a)(3), specifical-

earnings and service used in examples appearing in this Summary Plan Description."

**2.** From 2001 through 2003, Livick received a monthly severance benefit from Gillette. His pension was set to commence in January 2004.

ly a "declaration" that he was entitled to a Gillette pension that accounted for his years at both Gillette and Parker Pen.

The defendants moved for summary judgment, which the District Court granted on June 12, 2007. *Livick v. Gillette Co.*, 492 F.Supp.2d 1, 15 (D.Mass.2007). This appeal followed.

## II.

### A. *Motion To Strike Affidavit*

■ We turn first to Livick's appeal of an evidentiary matter. On defendants' motion, the district court struck a portion of the affidavit of Peter Miller, who worked as a human resources manager for Gillette in Janesville from 1993 to 1999. *Id.* at 5. When reviewing a grant of summary judgment, we often first consider challenges to the district court's evidentiary rulings, as such rulings define the record on which the summary judgment rests. *See Hoffman v. Applicators Sales & Serv., Inc.*, 439 F.3d 9, 13 (1st Cir.2006); *Schubert v. Nissan Motor Corp.*, 148 F.3d 25, 29 (1st Cir.1998); *Vazquez v. Lopez–Rosario*, 134 F.3d 28, 33 (1st Cir.1998). We review the district court's decision to exclude evidence, such as affidavits, for abuse of discretion. *Hoffman*, 439 F.3d at 13. Under that standard, we will not disturb the district court's ruling unless the record demonstrates an error of law or a serious lapse of judgment on the part of the court. *Id.* at 14; *Schubert*, 148 F.3d at 30.

■ Under Rule 56(e), an affidavit at the summary judgment stage must "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed.R.Civ.P. 56(e)(1). This "requisite personal knowledge must concern facts as opposed to conclusions, assumptions, or surmise." *Perez v. Volvo Car Corp.*, 247 F.3d 303, 316 (1st Cir.2001). The district court struck ¶ 5 of Miller's affidavit [3] because it would be inadmissible due to its lack of relevance to and probity of the issues of the case. *See Livick*, 492 F.Supp.2d at 5. The court did not abuse its discretion in striking the paragraph.

### B. *Section 502(a)(3) Claim*

Our review of a grant of summary judgment is de novo, and we resolve all reasonable inferences in favor of the non-moving party. *Mellen v. Trs. of Boston Univ.*, 504 F.3d 21, 24 (1st Cir.2007). Summary judgment is appropriate when the pleadings, the discovery, and any affidavits "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Section 502(a)(3) of ERISA enables plan beneficiaries to sue in their individual capacities to "obtain . . . appropriate equitable relief" (beyond the relief otherwise provided under the statute) to redress violations or enforce any provisions of either ERISA or the plan itself. 29 U.S.C. § 1132(a)(3); *Varity Corp. v. Howe*, 516 U.S. 489, 510–15, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996).

As his basis for § 502(a)(3) relief, Livick claims that Gillette was in breach of its fiduciary duty under ERISA. We dis-

---

**3.** That paragraph reads: "From all my dealings with the company, it was clear to me that Gillette's employment benefit programs were administered by the corporation through the corporate human resources organization and its local branches like Janesville and that Gil-

lette corporate made all discretionary decisions concerning the pension plan and other benefits." The district court noted that Miller could not attest to Gillette's human resource policies in Boston during the relevant time period. *Livick*, 492 F.Supp.2d at 5.

agree, as we explain below. Because we disagree, we do not reach the question of whether the relief he seeks is the type of equitable relief available under § 502(a)(3).[4] Livick also argued before the district court that Gillette should be held liable under § 502(a)(3) based on a theory of estoppel. That basis for his claim was not specified in his original complaint and is not argued in precise terms before this court. However, Livick's theory of his case is largely built on a reliance argument: that he relied to his detriment on the mistaken pension estimates he received. Thus we briefly address the estoppel theory, though we find it also unavailing.

■ Under ERISA, a fiduciary is defined functionally: a party is a fiduciary "to the extent" that he or she exercises discretion over the management of the plan or its funds or over its administration. 29 U.S.C. § 1002(21)(A); *Pegram v. Herdrich*, 530 U.S. 211, 225–26, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000); *Varity*, 516 U.S. at 498, 116 S.Ct. 1065. A fiduciary named in an ERISA plan can undertake non-fiduciary duties, and a party not identified as a plan fiduciary can become one if, but only to the extent that, he or she undertakes discretionary tasks related to the plan's management or administration. *See Pegram*, 530 U.S. at 225–26, 120 S.Ct. 2143 (employer can switch between wearing its "fiduciary" and "employer" hats); *Varity*, 516 U.S. at 498, 116 S.Ct. 1065 (same); *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 18 (1st Cir.1998) (person can become fiduciary to extent she undertakes fiduciary duties). Thus in cases alleging breach of ERISA fiduciary duty, "the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest," which is the heart of Livick's complaint, "but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram*, 530 U.S. at 226, 120 S.Ct. 2143.

■ As Livick acknowledges, Brundige (the human resources representative) is not a named fiduciary under the Plan. Brundige was also not a functional fiduciary because providing Livick with an estimate of his future pension benefits was not a fiduciary task. Rather, the "[c]alculation of benefits" and "[p]reparation of reports concerning participants' benefits" are "ministerial functions," and "a person who performs purely ministerial functions ... within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary." 29 C.F.R. § 2509.75–8(D–2); *see also, e.g., Schmidt v. Sheet Metal Workers' Nat'l Pension Fund*, 128 F.3d 541, 544 n. 1, 547 (7th Cir.1997) (listing tasks—including "determining benefit amounts due under the plan, and responding to participants' inquiries about pension benefits"—assigned to benefit analyst found to be a non-fiduciary). Livick tries to argue that this case is like those in which the employee was given misleading information while seeking advice about the security of his future benefits. *See, e.g., Varity*, 516 U.S. at 502–05, 116 S.Ct. 1065; *Taylor v. Peoples Natural Gas Co.*, 49 F.3d 982, 985–89 (3d Cir.1995). On the face of the complaint, however, all Livick sought and received from Brundige was an estimate: his benefits had already accrued, he was not choosing among different options, and there was no discussion of the plan itself. This was purely a ministerial request.

---

4. We note that the analysis of this question in *Todisco v. Verizon Communications, Inc.*, 497 F.3d 95, 100–01 (1st Cir.2007), would apply similarly here.

Livick also asserts that Gillette breached its fiduciary duty when it hired, retained, and failed to properly train Brundige to perform such non-fiduciary tasks. This argument fails as well. Under the Department of Labor's interpretation of the relevant ERISA provisions, a named fiduciary can be liable for the acts and omissions of a person designated to carry out *fiduciary* responsibilities. 29 C.F.R. § 2509.75–8(FR–14) (referencing 29 U.S.C. § 1105(c)(2)(A)). Brundige was not exercising such delegated fiduciary functions. The regulations do require a fiduciary to exercise "prudence in the selection and retention" of persons charged with merely ministerial tasks, but only to the extent that the fiduciary "*rel[ies] on* information, data, statistics, or analyses" provided by these ministerial agents. 29 C.F.R. § 2509.75–8(FR–11) (emphasis added). Gillette did not rely on Brundige's, or anyone else's, estimates in its management and administration of the Plan.[5]

Some courts have held named fiduciaries liable when non-fiduciary representatives provided beneficiaries with misleading information, but they have done so in situations where the fiduciaries failed to provide clear and accurate information in the first place. *See Bowerman v. Wal–Mart Stores, Inc.,* 226 F.3d 574, 591 (7th Cir. 2000); *see also Schmidt,* 128 F.3d at 548 ("If the written materials were inadequate, then the fiduciaries themselves must be held responsible for the failure to provide complete and correct material information in the event that a nonfiduciary agent provides misleading information."). We do not decide whether to follow those cases; they are plainly distinguishable. Gillette provided Livick with clear, accurate, and complete information in multiple documents: in the letters mailed directly to him in 1997 and 1998, on the Estimator's website, and in the Plan itself. Indeed, Livick was quite aware of the policy as to former Parker Pen employees.

Providing estimates of benefits is not a fiduciary function, nor is hiring someone to provide such estimates purely for plan members' use. With no fiduciary function involved, there can be no breach of fiduciary duty.[6]

We turn briefly to the estoppel theory. Most of our sister circuits have recognized

---

5. The Third Circuit appears to have construed this regulation more broadly than we do. *See Taylor,* 49 F.3d at 987 (citing 29 C.F.R. § 2509.75–8(FR–11) in holding a fiduciary liable for the ministerial tasks of a non-fiduciary acting as the fiduciary's agent). We read the plain language of the regulation as more circumscribed.

The regulation is meant to cover the ministerial work of others on which a fiduciary relies in "discharging [its] fiduciary responsibilities"; an example might be a fiduciary's use of a database maintained by another in the management or administration of its plan. Thus the regulation might apply to Gillette's employment of someone who entered incorrect information into the system from which Brundige drew his data *if* Gillette were also relying on that database to determine actual benefits or perform other fiduciary duties, which is not the case here. Rather, Gillette

provides opportunities for employees to receive estimates as a service to its employees.

The regulation as a whole also supports our reading. Another provision holds named fiduciaries responsible for the hiring and supervision of all persons to whom they delegate fiduciary tasks. 29 C.F.R. § 2509.75–8(FR–14) (referencing 29 U.S.C. § 1105(c)(2)(A)). If the Department of Labor meant to apply similar standards to the employment of anyone charged with ministerial duties as well, it could have included ministerial employees in FR–14 or used similar language in FR–11. Instead, FR–11 speaks of a *subset* of ministerial duties, specifically the provision of "information, data, statistics or analyses" on which fiduciaries "rely" in "discharging [their] fiduciary responsibilities."

6. Given that there is no breach of fiduciary duty here, plaintiff's negligence standard argument is not relevant.

estoppel claims under ERISA's civil enforcement provisions. *See, e.g., Hooven v. Exxon Mobil Corp.,* 465 F.3d 566, 578 (3d Cir.2006); *Mello v. Sara Lee Corp.,* 431 F.3d 440, 444 (5th Cir.2005); *Devlin v. Empire Blue Cross & Blue Shield,* 274 F.3d 76, 85–86 (2d Cir.2001); *Bowerman,* 226 F.3d at 586; *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 403 & n. 13 (6th Cir.1998) (en banc); *Greany v. W. Farm Bureau Life Ins. Co.,* 973 F.2d 812, 821 (9th Cir.1992); *Kane v. Aetna Life Ins.,* 893 F.2d 1283, 1285 (11th Cir.1990). We have previously found it unnecessary to decide whether we will follow suit. *See Todisco v. Verizon Commc'ns, Inc.,* 497 F.3d 95, 99 n. 4 (1st Cir.2007); *Mauser v. Raytheon Co. Pension Plan,* 239 F.3d 51, 57 (1st Cir.2001); *City of Hope Nat'l Med. Ctr. v. HealthPlus, Inc.,* 156 F.3d 223, 230 n. 9 (1st Cir.1998); *Law v. Ernst & Young,* 956 F.2d 364, 370 n. 9 (1st Cir.1992). This case likewise does not provide suitable facts to present the issue to us.

■ ERISA plans must be in writing and cannot be modified orally.[7] *See* 29 U.S.C. § 1102(a)(1); *Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 83, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995); *accord, e.g., Bowerman,* 226 F.3d at 586; *Sprague,* 133 F.3d at 402–03. As we have previously explained, a plan beneficiary might reasonably rely on an informal statement interpreting an *ambiguous* plan provision; if the provision is clear, however, an informal statement in conflict with it is in effect purporting to *modify* the plan term, rendering any reliance on it inherently unreasonable. *See Law,* 956 F.2d at 370 (discussing same distinction drawn in *Kane,* 893 F.2d at 1285); *see also Todisco,* 497 F.3d at 102 (claim based on purported oral modification to plan terms unreasonable when plan language is clear). This is why courts which do recognize ERISA-estoppel do so only when the plan terms are ambiguous. *See, e.g., Mello,* 431 F.3d at 447 (noting "the clear and consistent case law forbidding recognizing reasonable reliance on informal documents in the face of unambiguous Plan terms"); *Bowerman,* 226 F.3d at 588 ("[T]he oral representations of an ERISA plan may not be relied upon by a plan participant when the representation is contrary to the written terms of the plan and those terms are set forth clearly."); *Frahm v. Equitable Life Assurance Soc'y of the U.S.,* 137 F.3d 955, 961 (7th Cir. 1998) (noting the circuit's rejection of the proposition "that bad advice delivered verbally entitles plan participants to whatever the oral statement promised, when written documents provide accurate information"); *Sprague,* 133 F.3d at 404 ("[E]stoppel can only be invoked in the context of ambiguous plan provisions."); *Greany,* 973 F.2d at 822 (barring any ERISA-estoppel claims "based upon statements of a plan employee which would enlarge [the beneficiary's] rights against the plan beyond what he could recover under the unambiguous language of the plan itself"); *Coleman v. Nationwide Life Ins. Co.,* 969 F.2d 54, 59 (4th Cir.1992) ("Equitable estoppel principles ... have not been permitted to vary the written terms of a plan.").

■ Livick concedes that he understood the Parker Pen policy, and he is

---

**7.** Livick gains nothing from the fact that the online Estimator and Brundige both provided him with estimates in writing. These written estimates were all informal and were clearly identified as estimates, and none of them purported to modify the Plan terms. *See, e.g., Sprague,* 133 F.3d at 403 ("That [the defendant's] statements were made in writing is irrelevant as they do not profess to be plan amendments." (quoting *Borst v. Chevron Corp.,* 36 F.3d 1308, 1323 (5th Cir.1994)) (alteration in original) (internal quotation marks omitted)); *see also Mello,* 431 F.3d at 447 (unreasonable to rely on "informal documents in the face of unambiguous Plan terms").

receiving the pension that accounts for his service with both Gillette and Parker and that he was guaranteed under the terms of the Plan. He cannot now argue estoppel because it was unreasonable for him to rely on informal communications which contradicted clear plan terms.

Livick points to the company's retention of the right "to amend the Plan ... in any respect and at any time." Livick asserts that the repeated mistaken estimates, because they consistently used the wrong start date, led him to believe that the Plan had indeed been changed regarding the calculation of Parker Pen employees' pensions, perhaps as part of the special severance package. Under the clear terms of the Plan, however, such amending action must be taken by the Compensation Committee of Gillette's Board of Directors. In contrast, the Plan specifies that the Retirement Plan Committee, which actually administers the Plan, has "no power to add to, subtract from, or modify any of the terms of the Plan ..., or to change or add to any benefits provided by the Plan, or to waive or fail to apply any requirement or rule of the Plan."

Thus Livick's argument that he reasonably believed the mistaken estimates he received indicated a change in the Plan fails. By the clear terms of the Plan, any change to the method of calculation could only have come from on high: the Compensation Committee of the Board of Directors. Both Brundige and the online Estimator lacked the actual authority to modify the plan terms. They also lacked apparent authority to do so, as every estimate given to Livick was clearly labeled an estimate. Further, the online Estimator had a prominent disclaimer that the terms of the Plan trumped any estimates. There

was nothing to suggest that the Plan had in fact been modified to double-count his Parker Pen years or to calculate his pension under only the Gillette plan (which also would have resulted in a higher total benefit).

Livick's situation is not an unusual one. Even assuming utter good faith on Livick's part, other courts have denied claims on facts much more compelling than his. In *Mello,* an employee of Sara Lee was entitled to the pension he had accrued under a company acquired by Sara Lee as well as subsequent pension benefits earned for his time at Sara Lee. *Mello,* 431 F.3d at 442. Mello had received, however, annual statements from Sara Lee for *six years* erroneously double-counting his time working for the acquired company. *Id.* When the error was finally caught, the estimate of Mello's monthly pension benefit dropped by $5500. *Id.* Based primarily on the unambiguous plan terms, the Fifth Circuit denied Mello's estoppel-based ERISA claim. *Id.* at 448.

In *Christensen v. Qwest Pension Plan,* 462 F.3d 913 (8th Cir.2006), a clerical error resulted in five mistaken estimates of the plaintiff's pension benefits. *Id.* at 916. Christensen relied on these estimates to decide when to retire. *Id.* The Eighth Circuit rejected Christensen's claim that Qwest's plan administrators were in breach of their fiduciary duty due to their hiring of a company that used an informal process that was known to result in occasional mistaken estimates, given the multiple clear disclaimers accompanying the estimates and the need to respond quickly to a high volume of estimate requests. *Id.* at 917.[8]

---

8. *See also Hart v. Equitable Life Assurance Soc'y,* 75 Fed.Appx. 51, 52–53 (2d Cir.2003) (where data-entry error generated erroneous

pension estimate, court refused to require payment of erroneous estimate on either estoppel or breach of fiduciary duty grounds).

### III.

The pension Livick is receiving accounts for all his years of service at Parker Pen and Gillette. It is the amount provided for under the clear terms of the Plan. Livick understood (or should have understood) these clear terms due to multiple personal letters he received from the company and from his own research on the company website. Nothing in ERISA secures to him a windfall when a ministerial employee makes a mistake in an estimate, a mistake of which the beneficiary is or should be aware because of the company's clear and accurate ERISA disclosures.

There was no breach of fiduciary duty and there was no reasonable reliance on the pension estimates. The grant of summary judgment is *affirmed.*